**In re Albert CERCONE, Relator.**

No. 05–10–01076–CV.

Court of Appeals of Texas, Dallas.

Sept. 7, 2010.

Charles Sartain, Looper, Reed & McGraw, P.C., Dallas, TX, for Relator.

Benjamin Laurence Stool, Crim. Dist. Atty's Office, Bruce Sherbet, Dallas, TX, J. Darlene Ewing, Law Offices of J. Darlene Ewing, Sunnyvale, TX, for Respondent.

G. Kevin Buchanan, Buchanan & Burke, L.L.P., Joseph Ramirez Miller, Law Office of Joseph Miller, Dallas, TX, for Real Party in Interest.

Before Justices MOSELEY, BRIDGES, and LANG.

## OPINION

Opinion By Justice MOSELEY.

This is a petition for writ of mandamus concerning the November 2, 2010 general election ballot. Relator, Albert Cercone, is the Republican Party nominee for the office of Dallas County Justice of the Peace, Precinct 3, Place 1. Respondent Darlene Ewing is Chair of the Dallas County Democratic Party. Respondent Bruce Sherbet, Elections Administrator for Dallas County, is responsible for printing and mailing the general election ballots. TEX. ELEC.CODE ANN. §§ 31.043, 52.002 (West 2010).[1]

Cercone asserts that Real Party in Interest Joseph Ramirez Miller has or is going to be certified as the Democratic Party's nominee for that office. He requests this Court issue a writ of mandamus: (1) ordering Ewing to not certify Miller as the Democratic Party's nominee for that office; and (2) ordering Sherbet to not place Miller's name on the ballot for that office.

■■■ This Court has jurisdiction to consider relator's petition for writ of mandamus and to "compel the performance of

---

1. All statutory references herein are to the Texas Election Code unless otherwise indicated.

any duty imposed by law in connection with the holding of an election . . . regardless of whether the person responsible for performing the duty is a public officer." TEX. ELEC.CODE ANN. § 273.061 (West 2010). We may not resolve disputed fact issues in an original proceeding. *See Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex.1990). Before we may issue a writ of mandamus, relator must have a clear legal right to performance of the act he seeks to compel, and the duty of the officer sought to be compelled must be one clearly fixed and required by the law. *In re Link,* 45 S.W.3d 149, 151–52 (Tex.App.-Tyler 2000, orig. proceeding).

Per the record, the following is undisputed. Sabeeha Kazmi, who is not a party to this action, filed an application for a place on the March 2, 2010 Democratic Party primary ballot for the office of Dallas County Justice of the Peace, Precinct 3, Place 1. Ewing's notation on Kazmi's application indicates that it was accompanied by a petition in lieu of the required filing fee, consisting of 89 pages. By law, the petition must contain 750 valid signatures. See TEX. ELEC.CODE ANN. §§ 172.021(e), 172.025(2).

An application for a place on the ballot cannot be challenged "as to form, content, and procedure after the day before the beginning of early voting by personal appearance. . . ." TEX. ELEC.CODE ANN. § 141.034. For the March 2, 2010 Democratic primary election, that deadline was February 12, 2010. *See* TEX. ELEC.CODE ANN. § 85.001. Prior to that date, on January 17, 2010, Cercone wrote Ewing, challenging the number of valid signatures on Kazmi's petition. Ewing responded by letter the next day, stating, "I have reviewed your challenge to Ms. Sabeeha Kazmi based on insufficient signatures. Based upon the review, I do not believe Kazmi has the requisite 750 signatures. Accord-

ingly, I have declared Kazmi ineligible for the Democratic primary ballot." Kazmi's name remained on the primary election ballot.

On August 26, 2010, Cercone filed this petition for writ of mandamus. He asserts Ewing has or is going to certify Miller as the Democratic nominee for the office of Dallas County Justice of the Peace, Precinct 3, Place 1, in replacement of Kazmi. Attached to Cercone's petition is his sworn affidavit. He states that at various times after the primary election, Kazmi's name appeared on the Dallas County Democratic Party website as a candidate for the office. On July 7, 2010, Cercone noticed that Miller's name appeared on the website as the Democratic Party nominee for the office. On July 15, 2010, Cercone sent a letter to Ewing under the open records act asking for documents that would show the process by which Miller became the nominee. Cercone states that Ewing has not responded to his letter.

In addition, Cercone attaches what he swears to be true and correct copies of: Kazmi's application, including the petition attached thereto; his letter to Ewing, and Ewing's letter to him in response. He also attaches a copy of a printout of the Dallas County Democratic Party website showing Miller as the party's candidate for the office and a copy of his July 15 letter to Ewing.

We requested responses from real parties in interest and respondents. *See* TEX. R.APP. P. 52.

Ewing's response states that: (1) the party's district executive committee for Justice of the Peace Precinct 3 met on May 17, 2010 and nominated Miller as the replacement candidate for that office; and (2) on May 18, 2010, Miller was certified to the election authority as the Democratic Party's replacement nominee for the office. Sherbet's amended response includes his

affidavit, stating, in part: "Our records reflect there are two candidates running for this place: Albert Cercone (Republican) and Joseph Ramirez Miller (Democrat)." Attached to his response is a certified copy of a May 18, 2010 letter from the Dallas County Democratic Party certifying Miller as the party's replacement nominee for the office. The letter, signed by W. David Griggs as chair of the party's district executive committee for Justice of the Peace Precinct 3, states the reason for the vacancy is the "ineligibility" of Kazmi. As chair of the relevant executive committee, Griggs was responsible for communicating any replacement nominee to the authority responsible for having the official ballot prepared. *See* TEX. ELEC.CODE ANN. § 145.037(d).

Cercone asserts that although Kazmi's application was deficient for lack of the necessary number of signatures on her petition, there is nothing to indicate she was "ineligible" for the position under the election code. His petition states his position: "There is no authority under the Texas Election Code for a political party to select and certify a replacement nominee for a candidate who was removed for filing an invalid application for a place on the ballot." Ewing argues Cercone is not entitled to mandamus relief because he failed to make a demand for performance of a ministerial duty or non-discretionary act. *See In re Cullar*, 320 S.W.3d 560, 564 (Tex.App.-Dallas 2010, orig. proceeding).

Section 145.003 controls the process for an administrative—i.e. county chair's—declaration of ineligibility and "[e]xcept for a judicial action in which a candidate's eligibility is in issue, *a candidate may be declared ineligible only as provided by this section.*" TEX. ELEC.CODE ANN.

§ 145.003(a) (emphasis added). The section also states:

> (f) A candidate may be declared ineligible *only if:*
>> (1) the information on the candidate's application for a place on the ballot indicates that the candidate is ineligible for the office; or
>> (2) facts indicating that the candidate is ineligible are conclusively established by another public record.

*Id.* § 145.003(f) (emphasis added). Additionally, the only authorization for naming of a replacement nominee for placement on the general election ballot is set forth in section 172.058. In pertinent part, it provides:

> (a) If a candidate who has made an application for a place on the general primary election ballot *that complies with the applicable requirements* dies or is *declared ineligible* after the 62nd day before general primary election day, the candidate's name shall be placed on the ballot and the votes cast for the candidate shall be counted and entered on the official election returns in the same manner as for the other candidates.
>
> (b) If the deceased or ineligible candidate receives the vote required for nomination, the appropriate executive committee may select the nominee and certify the nominee's name of replacement on the general election ballot as provided by Subchapter B of Chapter 145, for filling a vacancy in a nomination.

*Id.* § 172.058(a), (b) (emphasis added).[2] This and other sections of the election code show a clear distinction between the requirements for an application and the requirements for eligibility to hold a public

---

2. Subchapter B of Chapter 145 applies to "a candidate who is a political party's nominee in the general election for state and county officer except a candidate for president or vice-president of the United States." TEX ELEC.CODE ANN. § 145.031.

office. *See id.* §§ 141.001; 141.031; 141.032; 141.034; 172.029(d); *Escobar v. Sutherland,* 917 S.W.2d 399, 409 (Tex. App.-El Paso 1996, orig. proceeding) (challenge to requirements of form, content, and procedure for application is "distinctly different and completely separate" from challenge to candidate's eligibility for office).

■■ Ewing's stated reason for her declaration that Kazmi was ineligible was that Kazmi's petition lacked the required number of valid signatures. That is not a valid ground for declaring a candidate ineligible. TEX. ELEC.CODE ANN. § 145.003(f). However, entitlement to mandamus relief generally requires: a legal duty to perform a non-discretionary act; a demand for performance; and a refusal. *In re Cullar,* 320 S.W.3d 560, 564 (Tex.App.-Dallas 2010, orig. proceeding). The record does not include any evidence of a demand to Ewing to perform the act he requests this Court to compel—that Ewing not certify Miller as the Democratic Party nominee. Cercone's July 15 letter to Ewing is not a demand to not certify or remove Miller as a replacement nominee.

Moreover, the duty implicated by Cercone's argument is the duty of Ewing as party chair to declare a candidate ineligible only on one of the two statutory grounds stated in section 145.003(f). *See In re Tolliver,* 2002 WL 92919 at *2 (Tex. App.-Dallas 2002, orig. proceeding) (not designated for publication). By declaring Kazmi ineligible, Ewing triggered the power to nominate a replacement candidate. *See* TEX. ELEC.CODE ANN. §§ 172.058(b); 145.036–.037.[3]

The record does not show that Cercone ever demanded that Ewing perform her duty not to declare Kazmi ineligible for any reason other than the exclusive reasons in section 145.003(f). Absent this demand and a refusal, Cercone has not shown his entitlement to mandamus relief.

■■ There is an exception to the demand requirement in those rare circumstances where the "request would have been futile and the refusal little more than a formality." *In re Perritt,* 992 S.W.2d 444, 446 (Tex.1999) (per curiam) (quoting *Terrazas v. Ramirez,* 829 S.W.2d 712, 723 (Tex.1991)). Cercone asserts any request on Ewing would have been futile because she erroneously declared Kazmi ineligible and then proceeded to cause the selection and certification of an illegal replacement nominee. However, Ewing agreed with Cercone's challenge to the signatures required for Kazmi's application. It is certainly possible that Ewing would have responded to a demand to set aside her declaration of ineligibility because Cercone's challenge did not implicate Kazmi's eligibility for office. Such a request and refusal is necessary for mandamus relief. *Cullar,* 320 S.W.3d at 566–67.

■ With regard to Sherbet, the record indicates that Miller has been certified to Sherbet as a candidate. Cercone admits that "Sherbet has no authority to inquire into the validity of the certification of Miller.... If Sherbet believes that the certification of Miller was unlawful, there is nothing that he, acting on his own authority, can do about it." We agree. Cercone also cites—correctly—section 52.003 as requiring Sherbet to place on the ballot the name of each candidate "whose entitlement to placement on the ballot has been lawfully certified to the authority." TEX. ELEC. CODE ANN. § 52.003(a)(2).

---

3. And the person responsible for certifying Miller was Griggs, not Ewing. *See id.,* § 145.037(d).

Cercone cites no statute imposing a duty on Sherbet to omit the name of a candidate who has been certified absent a determination by a trial court or other proper authority that the certification was unlawful. Rather, Cercone's position is that Miller's certification was unlawful, and that we should issue a writ of mandamus directing Sherbet to not place Miller's name on the ballot. We agree with Cercone that a demand on Sherbet in this situation would have been futile. However, absent a demand on Ewing to withdraw the declaration of ineligibility or a determination by an appropriate authority that certification of Miller was unlawful, Sherbet's duty to place the certified replacement nominee on the ballot is fixed. *See* TEX. ELEC.CODE ANN. § 52.003(a)(2).

■ Section 273.061 does not grant us power to issue mandamus relief ordering performance of a duty "not precisely identified as a duty by statute." *Cullar*, 320 S.W.3d at 566. As we said in *Cullar*, "We find no applicable section of the election code that empowers us to simply declare [Miller] ineligible and order respondents to do whatever is necessary to take [Miller] off the ballot." *Id.*

The law provides avenues for relief of any violation of the election code. *See* TEX. ELEC.CODE ANN. § 273.081 (availability of injunctive relief for person harmed or in danger of being harmed by a violation or threatened violation of the election code); *see also* §§ 145.003(h), 145.005 (procedure generally for determination of ineligibility occurring after the deadline for omitting an ineligible candidate's name from the ballot). Under the substantive and procedural facts of this case as presented to us, however, those avenues do not include mandamus. *See* TEX. ELEC.CODE ANN. § 273.061.

We conclude relator has not shown he is entitled to mandamus relief. *See Cullar*,

320 S.W.3d at 567. Accordingly, we deny the petition for writ of mandamus. TEX. R.APP. P. 52.8(a). By separate order, we vacate the stay issued in this proceeding.

Because of the time remaining as to certain deadlines identified by the relator, *see* TEX. ELEC.CODE ANN. §§ 145.064–.065, no motion for rehearing will be entertained.